CLERK'S COPY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

99 SEP 10 AM 10: 42

*Robt f m mauel*
CLERK-SANTA FE

CITY OF HOBBS,

      Plaintiff,

vs.

THE HARTFORD FIRE INSURANCE
COMPANY and NUTMEG
INSURANCE COMPANY,

      Defendants.

No. 95-0079 PK/LFG

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes on for consideration of Defendant Nutmeg Insurance Company's Motion to Reconsider and For Judgment Notwithstanding the Verdict filed June 4, 1999 (doc. 326), Nutmeg Insurance Company's Motion for Judgment Notwithstanding the Verdict Awarding Punitive Damages filed June 7, 1999 (doc. 327), and Plaintiff's Application for Award of Attorney's Fees filed June 25, 1999 (doc. 333). The court being advised fully in the premises, finds that the motions are not well taken and should be denied.

### Background

This case involves a bad faith failure to settle a claim brought by Plaintiff insured

("Hobbs or insured") against Defendant insurer ("Nutmeg or insurer"). The court's original grant of judgment as a matter of law in favor of the insurer was reversed on appeal in City of Hobbs v. Hartford Fire Ins. Co., 162 F.3d 576 (10th Cir. 1998), and the case was retried. The facts of the case are contained in the appellate opinion, see id. at 578-80, and need not be restated here. The evidence on retrial was largely the same as in the first trial, but with the addition of different expert witnesses. On retrial, the jury found in favor of the insured and awarded $1,562,591.84 in compensatory damages and $1,000,000 in punitive damages. Judgment was entered on the jury's verdict in favor of the insured in the amount of $2,562,591.84, plus prejudgment interest at fifteen percent per year on the compensatory damages amount of $1,562,591.84, included therein.

## Discussion

The insurer contends that the prejudgment interest rate is incorrect and should be modified, see Fed. R. Civ. P. 59(e), and that it is entitled to judgment as a matter of law on the punitive damages award, see Fed. R. Civ. P. 50(b), for a variety of reasons including insufficient evidence, an incorrect instruction, and a violation of equal protection. The insured claims entitlement of attorney's fees for prosecuting this action.


I.    Prejudgment Interest

The purpose of prejudgment interest is to make the injured party whole. See City

of Milwaukee v. Cement Div., Nat'l Gypsum Co., 515 U.S. 189, 196-97 (1995). Under federal law, prejudgment interest is appropriate when it would compensate the injured party and would not be inequitable. See Towerridge, Inc. v. T.A.O., Inc., 111 F.3d 758, 763-64 (10th Cir. 1997). An award of prejudgment interest in an excess judgment case is hardly novel. See Venn v. St. Paul Fire & Marine Ins. Co., 99 F.3d 1058, 1066-68 (11th Cir. 1996) (applying Florida law). In this diversity case, the court looks to state law as to an award of prejudgment interest. See Strickland Tower Maintenance v. AT&T Communications, Inc., 128 F.3d 1422, 1429 (10th Cir. 1997). In New Mexico, prejudgment interest may be awarded under N.M. Stat. Ann. §§ 56-8-3 and 56-8-4(B) (Michie 1996 Repl. Pamp.). See City of Carlsbad v. Grace, 966 P.2d 1178, 1187 (N.M. Ct. App. 1998). Prejudgment interest under § 56-8-3 "arises by operation of law and constitutes an obligation to pay damages to compensate a claimant for the lost opportunity to use money owed the claimant and retained by the obligor between the time the claimant's claim accrues and the time of judgment (the loss of use and earning power of the claimant's funds)." Sunwest Bank of Albuquerque, N.A. v. Colucci, 872 P.2d 346, 350 (N.M. 1994). Although the equities of the case must be considered, where the amount of the claim is liquidated (fixed and ascertainable), prejudgment interest is appropriate absent a showing of peculiar circumstances by the defendant. See Colluci, 872 P.2d at 351; Ranch World of New Mexico, Inc. v. Berry Land & Cattle Co., Inc., 796 P.2d 1098, 1100 (N.M. 1990). Even if the amount is not fixed and ascertainable, the

trial court retains discretion to make an award of prejudgment interest of not more than fifteen percent. See Colucci, 872 P.2d at 351.

Under § 56-8-4(B), the court may award prejudgment interest "not as damages, but as a management tool or penalty to foster settlement and prevent delay in all types of litigation." Colucci, 872 P.2d at 351. In exercising discretion to award prejudgment interest under § 56-8-4(B), the court is required to consider "whether the plaintiff was the cause of unreasonable delay and whether the defendant made a reasonable and timely offer of settlement." Id. Thus, the "purpose [of § 56-8-4(B)] is to foster settlements and prevent delays," Southard v. Fox, 833 P.2d 251, 254 (N.M. Ct. App. 1992), and it "applies to all actions, including tort actions in which damages are not reasonably ascertainable before trial," Charter Servs., Inc. v. Principal Mut. Life Ins. Co., 868 P.2d 1307, 1314 (N.M. Ct. App. 1994).

Nutmeg argues that § 56-8-3 is inapplicable to this case because it applies only to contract claims and prejudgment interest for tort claims may only be awarded pursuant to § 56-8-4(B). The court is of the view that the award is justified under § 56-8-3 given the nature of the claim and the equities. Specifically, this case is analogous to one "on money received to the use of another and retained without the owner's consent expressed or implied." N.M. Stat. Ann. § 56-8-3(B); see also Taylor v. Allegretto, 879 P.2d 86, 88-89 (N.M. 1994) (allowing prejudgment interest by analogy). The award compensates Hobbs for loss of use of the funds it expended to satisfy the excess portion of the

underlying judgment.

An insurance policy is a contract and implied in that contract is a covenant of good faith and fair dealing. This was an action for breach of the implied covenant of good faith and fair dealing, which includes the obligation to settle claims where a substantial likelihood of an excess judgment exists. Though "bad faith" actions draw from contract and tort, see Lujan v. Gonzales, 501 P.2d 673, 680 (N.M. Ct. App. 1972) (declining to decide the issue), the seminal case on bad faith failure to settle, Ambassador Ins. Co. v. St. Paul Fire & Marine Ins. Co., 690 P.2d 1022, 1024-25 (N.M. 1984), views the implied covenant of good faith as arising under the contract. Because the insurer has the contractual right to control the defense, it also has a duty to attempt settlement in good faith. See id.; see also Dairyland Ins. Co. v. Herman, 954 P.2d 56, 60-61 (N.M. 1997). Although liability in this case was contested, the damages incident to any breach were uncontroverted. Both parties agreed compensatory damages would equal the amount that Hobbs was required to pay on the excess judgment and the jury was so instructed. See Jury Instr. No. 8J (doc. 319). Merely because liability was contested does not preclude an award of prejudgment interest. See United Nuclear Corp. v. Allendale Mut. Ins. Co., 709 P.2d 649, 657 (N.M. 1985). An award of prejudgment interest in this case merely compensates Plaintiff for the damages flowing from the breach. See id.

Because the court resolved the prejudgment issue under § 56-8-3, it is unnecessary

- 5 -

to determine whether under § 56-8-4(B) Nutmeg made a timely and reasonable offer of settlement. See Lucero v. Aladdin Beauty Colleges, Inc., 871 P.2d 365, 368 (N.M. 1994). The court does note that in an unpublished order and judgment, the Tenth Circuit upheld a fifteen percent prejudgment interest award in a first-party coverage case on the authority of § 56-8-4. See Biava v. Insurers Administrative Corp., Nos. 94-2013, 94-2014, 1995 WL 94461, at *5-6 (10th Cir. Mar. 1, 1995). Moreover, the New Mexico Court of Appeals has noted that prejudgment interest under § 56-8-4(B) may serve a compensatory purpose. See Weidler v. Big J Enter., Inc., 953 P.2d 1089, 1103 (N.M. Ct. App. 1997).

## II. Punitive Damages

Nutmeg argues that there was a lack of evidence that its actions were "willful, malicious or wanton" and that the jury could not have so found because it was not instructed with such a standard. The issues will be addressed in inverse order, in the context of the instruction Nutmeg tendered.

### A. Punitive Damage Instruction

The substance of jury instructions in a diversity case is a matter of state law; the form of the instructions is a federal procedural matter. See Daniel v. Ben E. Keith Co., 97 F.3d 1329, 1332 (10th Cir. 1996). In Jessen v. National Excess Ins. Co., 776 P.2d

1244, 1246 (N.M. 1989), the New Mexico Supreme Court held that "[b]ad faith supports

punitive damages upon a finding of entitlement to compensatory damages." The

Supreme Court relied upon United Nuclear Corp., 709 P.2d at 654, which decided that

"[t]o assess punitive damages for breach of an insurance policy there must be evidence of

bad faith or malice in the insurer's refusal to pay." See Jessen, 776 P.2d at 1246; see also

Suggs v. State Farm Fire & Cas. Co., 833 F.2d 883, 891-92 (10th Cir. 1987) ("The

[insureds] concede that, absent a finding of at least bad faith, no punitive damages are

permissible.").

     At the time of trial, Nutmeg argued that the New Mexico Supreme Court's

decision in Allsup's Convenience Stores, Inc. v. North River Ins. Co., 976 P.2d 1, 17

(N.M. 1998), supported its tendered instruction that punitive damages required not only a

finding of bad faith resulting in compensatory damages, but also "that the conduct of

Nutmeg Insurance Company was malicious, willful, reckless, wanton, fraudulent,

reckless, or wanton [sic], and that Nutmeg Insurance Company had an evil intent or

culpable mental state to harm the City of Hobbs." Defendant Nutmeg's Punitive

Damages Instruction filed May 28, 1999 (doc. 322). By letter dated August 31, 1999,

Nutmeg provided supplemental authority that the New Mexico Court of Appeals has

determined that under Allsup's and Paiz v. State Farm Fire & Cas. Co., 880 P.2d 300,

307 (N.M. 1994), New Mexico would "require the presence of aggravated conduct

beyond that necessary to establish the basic [bad faith] cause of action in order to impose

punitive damages." Teague-Strebeck Motors, Inc. v. Chrysler Ins. Co., 1999 WL

613501, *21 (N.M. Ct. App. Mar. 8, 1999), cert. denied, No. 25,827 (N.M. July 27,

1999).[1] In response, Hobbs submitted supplemental authority suggesting that the rule in

Teague-Strebeck should not be retroactively applied. See Hobbs' letter dated Sept. 3,

1999 (citing Beavers v. Johnson Controls World Servs., 881 P.2d 1376, 1383 (N.M.

1994)). The court finds it unnecessary to address this latter proposition.

Although a federal court in diversity is not required to give the exact state uniform

jury instructions indicated, it must endeavor to accurately reflect state substantive law.

See H.H. Robertson Co. v. V.S. DiCarlo General Contractors, Inc., 950 F.2d 572, 576

(8th Cir. 1991). In New Mexico, where there is a uniform jury instruction on the

substantive law, it should be given "unless under the facts or circumstances of the

particular case the published UJI Civil is erroneous or otherwise improper." N.M.R. Civ.

P. 1-051(D). Of course, a change in the law might require a deviation from a uniform

jury instruction, see Brooks v. K-Mart Corp., 964 P.2d 98, 101 (N.M. 1998), but the

matter is not so simple.

UJI 13-1718, on which the court relied, sets the standard for punitive damages in

bad faith cases:

> If you find that plaintiff should recover compensatory damages for
> the bad faith actions of the insurance company, then you may award
> punitive damages.

---

[1] The decision appears in N.M. State B. Bull. 14 (Aug. 26, 1999).

Punitive damages are awarded for the limited purposes of punishment and to deter others from the commission of like offenses.

The amount of punitive damages must be based on reason and justice, taking into account all the circumstances, including the nature of the wrong and such aggravating and mitigating circumstances as may be shown. The amount awarded, if any, must be reasonably related to the compensatory damages and injury.

3 N.M.R. Ann., Unform Jury Instructions–Civil (Michie 1999); doc. 319, instr. no. 8K. The "Directions for Use" indicates that "[t]his instruction must be given in every action under UJI . . . 13-1704 [bad faith failure to settle]. Because this instruction is complete on the availability of punitive damages in insurance bad faith actions, UJI 13-1827 [the general punitive damages instruction] is unnecessary and should not be given in such cases." Id. UJI 13-1718 was adopted pursuant to an order of the New Mexico Supreme Court with an effective date for cases filed on or after November 1, 1991.

UJI 13-1827, the general punitive damages instruction, instructs that punitive damages are available in a direct liability case if the plaintiff is entitled to compensatory damages against a defendant and that defendant's conduct was malicious, willful, reckless, wanton, fraudulent or in bad faith. Id. The "Directions for Use" section references the specific punitive damages instruction for insurance bad faith claims: "Some other chapters of UJI Civil contain punitive damage instructions specifically applicable to particular causes of action which should be used where appropriate. *See, e.g.,* . . . UJI 13-1718 (insurance bad faith)." Id. The current form of UJI 13-1827 is the product of an amendment effective July 1, 1998.

That the Uniform Jury Instructions do not require aggravated conduct beyond bad faith was not lost on the New Mexico Court of Appeals:

> We note, however, that <u>Paiz</u> was decided in 1994, three years after our bad faith jury instructions were adopted by the Supreme Court. UJI 13-1718 NMRA 1999 clearly contemplates the giving of a punitive damages instruction in every bad faith case submitted to a jury. <u>See id.</u> (Directions for Use). Given the holding in <u>Paiz</u>, and the language in <u>Allsup's</u>, upon which we rely, it would seem appropriate to reconsider this approach.

<u>Teague-Strebeck</u>, 1999 WL 613501 at *25 n.1. The New Mexico Court of Appeals has concluded that the formulation in the uniform jury instructions has been "superseded" by <u>Paiz</u> and <u>Allsup's</u>. <u>See</u> <u>Teague-Strebeck</u>, 1999 WL 613501, at *24.

A federal court in diversity must endeavor to decide a state-law issue as would a New Mexico court, and a decision of the New Mexico Court of Appeals as an intermediate appellate court should be followed absent a compelling reason. <u>See</u> <u>Perlmutter v. United States Gypsum</u>, 54 F.3d 659, 662 (10th Cir. 1995). The court is not convinced that <u>Teague-Strebeck</u> invalidates the punitive damage instruction in this case for several reasons.

- <u>First</u>, the New Mexico Supreme Court has not indicated that <u>Jessen</u> and <u>United Nuclear</u> have been overruled insofar as bad faith being a sufficient basis for punitive damages.

- <u>Second</u>, <u>Paiz</u> held that punitive damages could not be predicated solely on gross negligence, defined by the then-applicable uniform jury instruction (also effective

Nov. 1, 1991) "as a failure to exercise even slight care," without evidence of an "evil motive" or "culpable mental state." Paiz, 880 P.2d at 307-08. Paiz prefaced this discussion by observing that in breach-of-contract cases, the punitive damages "must be predicated on a showing of bad faith, or at least a showing that the breaching party acted with reckless disregard for the interests of the nonbreaching party." Paiz, 880 P.2d at 307. The instructions in this case did not predicate liability on gross negligence at all; to the contrary, they made it clear that for liability to attach the bad faith conduct must be motivated by Nutmeg's preferring its own interests to that of its insured and that punitive damages were predicated upon "bad faith actions" of the insurer and the "nature of the wrong." See doc. 319, instr. nos. 8A, 8B & 8K. This is consistent with the pronouncement that no cause of action exists in New Mexico for negligent failure to settle, although evidence of negligence or gross negligence may provide an inference of bad faith, see Allsup's, 976 P.2d at 17; Ambassador, 690 P.2d at 1025-26.

- Third, Paiz was decided in 1994, yet the 1998 revision of the UJI 13-1827 (the general punitive damages instruction) rewrote the "Directions for Use," still expressly referencing the current UJI 13-1718 for punitive damages instructions in bad faith cases.

- Fourth, Paiz illustrates an express overruling of a UJI. See Paiz, 880 P.2d at 310 ("Accordingly, UJI Civil 13-1827 must be modified in accordance with this

- 11 -

opinion."). Neither the Supreme Court nor the Court of Appeals has overruled UJI

13-1718. See State v. Wilson, 867 P.2d 1175, 1177-78 (N.M. 1994).

- Fifth, although Paiz cited Linthicum v. Nationwide Life Ins. Co., 723 P.2d 675

  (Ariz. 1986), it did so in rejecting gross negligence as a standard for punitive

  damages because conscious wrongdoing is required. See Paiz, 880 P.2d at 308

  (citing Linthicum, 723 P.2d at 679). Linthicum also indicated that punitive

  damages could not be awarded merely based upon the tort of bad faith, 723 P.2d at

  681, but the Paiz court did not endorse that holding. Linthicum also holds that the

  standard for punitive damages is clear and convincing evidence–a proposition

  rejected in Jessen with a citation to Linthicum as contrary authority. See Jessen,

  776 P.2d at 1247-48 (citing Linthicum, 723 P.2d 675). Thus, the court of appeals'

  reliance on the cite in Paiz to Linthicum is not determinative of the issue. See

  Teague-Strebeck, 1999 WL 613501 at * 22.

- Sixth, for the reasons that follow, the New Mexico Supreme Court's statements in

  Allsup's must be read in context and the case must be considered in relation to its

  facts.

In Allsup's the insurer argued that unreasonable conduct, as opposed to bad faith

conduct, is insufficient to award punitive damages and that an instruction on insurance

industry custom or standards, see 3 N.M.R. Ann. UJI 13-1705, doc. 319, instr. no. 8E,

actually meant "that the slightest unreasonableness makes an insurance company liable

for punitive damages," without a culpable mental state. Allsup's, 976 P.2d at 16-17.

Critically, the insurer "dr[ew] a line between bad faith conduct, which it agrees would

support punitive damages, and merely unreasonable conduct, which it says would not

support such damages." Id. at 16. This line must have been important because the court

mentioned it twice in the same paragraph.

The New Mexico Supreme Court rejected these due process arguments. Regarding

the challenged instruction, it characterized the insurer's reading as "creative, but not

persuasive" because under the instruction reasonableness would be a gauge of good faith

and unreasonableness would be a gauge of bad faith. Allsup's, 976 P.2d at 17. "While

bad faith and unreasonableness are not always the same thing, there is a certain point,

determined by the jury, where unreasonableness becomes bad faith and punitive damages

may be awarded." Id.

The court then provided an additional rationale for rejecting the insurer's due

process challenge to the instruction. Another instruction made it clear that the slightest

unreasonable conduct would not be enough for punitive damages; rather it instructed that

"'[the insured] has the burden of proving that any bad faith actions on the part of [the

insurer] were malicious, reckless or wanton, and, therefore punitive damages should be

awarded." Id. (emphasis omitted). "Reading both instructions together clearly advised

the jury that if it found that [the insurer] acted in bad faith, it also had to determine

whether this constituted malicious, reckless, or wanton conduct before could award

- 13 -

punitive damages. The jury was adequately instructed on the issue of punitive damages."
Id.

While these statements possibly suggest a standard for punitive damages beyond bad faith actions, they are only a supporting rationale for rejecting a due process argument premised upon another instruction (UJI 13-1705). Indeed, the due process argument was akin to allowing punitive damages for gross negligence, which the Paiz court had rejected. Allsup's simply does not, in the context of an adversarial presentation, reject the court's prior approach to punitive damages in the bad faith area, let alone in the bad faith failure to settle context. Indeed, the punitive damages discussion contained in the opinion later recites the necessary elements: "liability, compensatory damages suffered as a consequence of the liability, and a culpable mental state, or bad faith." Allsup's, 976 P.2d at 19. In Teague-Strebeck, 1999 WL 613501, at *22, the New Mexico Court of Appeals suggested that Allsup's demonstrates that "there is a real distinction between 'bad faith' sufficient to support an award of compensatory damages and 'bad faith' meriting exemplary damages." The problem with this analysis is that the Allsup's court's language makes no such distinction, nor is it apparent from the opinion. The proper standard for punitive damages in bad faith cases is hardly a new or novel issue; it is difficult to believe that the New Mexico Supreme Court intended to overrule its prior case law by implication. The instructions in Allsup's may be understandable given that the case involved breach of contract and inadequate claims handling on a

variety of theories, and this case involves only one bad faith claim–bad faith failure to settle. See UJI 13-1718 "Committee Comment" (noting that instruction may be expanded if a plaintiff relies upon recklessness as a basis for recovery of punitive damages).

The court also is concerned that the insurer's proffered instruction goes beyond the contended-for standard of punitive damages by requiring not only malicious, willful, reckless, wanton or fraudulent conduct, but also requiring the insured to prove that the insurer had an evil intent or culpable mental state to harm the City of Hobbs. Compare UJI 13-1827 (which also includes bad faith as a standard of culpability) with Defendant Nutmeg's Punitive Damages Instr. (doc. 322). Here, punitive damages were awarded pursuant to a bad faith standard requiring the insurer's motivation be the preference of its own interests; negligence or gross negligence could not be the ultimate finding allowing punitive damages.

B.    Sufficiency of the Evidence

In determining whether to grant a renewed judgment as a matter of law, the issue is whether "there is no legally sufficient evidentiary basis for a reasonable jury to find for [the nonmovant] on that issue." Fed. R. Civ. P. 50(a); see also id. 50(b); see Atchley v. Nordam Group, Inc., 180 F.3d 1143, 1147 (10th Cir. 1999). Viewing the evidence and the inferences in the light most favorable to the insured, whether the formulation is the one contained in the court's instructions or in Allsup's ("malicious, wanton or reckless"),

- 15 -

the evidence is sufficient for an award of punitive damages. The jury could conclude that the insurer preferred its interests to those of the insured by not undertaking a meaningful evaluation of the case, despite its awareness of the emotional factors in the case and the potential damages. Perhaps as a result of this inadequate evaluation, no excess letter was sent to the insured. The jury also could conclude that the insurer made no reasonable attempt to negotiate a settlement or initiate settlement discussions, despite substantial exposure by the insured to an excess verdict. In this regard, the jury could conclude that attorney Hall's early discussions about settlement of the case for $600,000, or $250,000-$300,000, deserved more than a $50,000 offer by the insured (totally unrealistic) coming two weeks before trial. This lack of communication on the part of insurer could be viewed as symptomatic of an approach to the defense that refused to look at the downside of the case.

C.     Violation of Equal Protection

The insured contends that UJI 13-1718 is unconstitutional as a violation of equal protection contrary to the Fourteenth Amendment and N.M. Const. art. II, § 18. The argument is straightforward—an award of punitive damages against an insurer that is not based upon willful, wanton or malicious conduct or a culpable mental state violates equal protection because it only applies to insurers—punitive damages against all others are awarded pursuant to UJI 13-1827. The insurer relies upon Allsup's: "The Supreme

Court's holding in <u>Allsup's</u> makes it clear that an instruction on punitive damages requiring malicious, reckless or wanton conduct is necessary for the instruction to withstand constitutional scrutiny." Nutmeg Insurance Company's Reply to Plaintiff's Response to Nutmeg's Motion for Judgment Notwithstanding the Verdict Awarding Punitive Damages filed July 8, 1999 at 2 (doc. 337). The insurer is making a different due process argument than those addressed and rejected in <u>Allsup's</u>. <u>Allsup's</u> rejected a due process argument that insurer's "were singled out by the jury instructions as having to act only unreasonably, as opposed to acting in bad faith, in order to be held liable for punitive damages." 976 P.2d at 16. The court is doubtful that application of state common law on punitive damages in a bad faith failure to settle case is state action, let alone contrary to a rational basis.

III.    Attorney's Fees

The insured contends that it is entitled to attorney's fees under New Mexico and federal law under the "bad faith" exception to the American Rule as well as under N.M. Stat. Ann. § 39-2-1 (Michie 1991 Repl. Pamp.). It further argues that federal and state policies support an award of attorney's fees. The insured contends that a reasonable attorney's fee from June 1994 through May 31, 1999 would be $484, 993.71. <u>See</u> Amended Affidavit of Eric Scott Jeffries filed July 2, 1999 at 2 ¶ 10 (doc. 336).

A federal court in diversity may award attorney's fees pursuant to the bad faith

exception. See Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991). The insured contends that the insurer's defense of this case was doomed after the Tenth Circuit's decision remanding the case for a new trial and the New Mexico Supreme Court's decision in Dairyland, 954 P.2d 56. Accordingly, the insured argues that is entitled to attorney's fees because the insurer's conduct in maintaining a defense was vexatious and unreasonable. See Alyeska Pipeline Serv. Co. v. Wilderness Soc., 421 U.S. 240, 247, 258-59 (1975); Towerridge, Inc., 111 F.3d at 768 (discussing exceptions to American Rule); New Mexico Right to Choose/NARAL v. Johnson, No. 23239, 1999 WL 516704, at *5-6 (N.M. June 23, 1999) (discussing "bad faith" exception). The insured also argues that parallel federal and state policies favor such an award.

The insured's policy argument would eviscerate the narrowness of the bad faith exception to the American Rule. Any prelitigation conduct is not within the scope of the bad faith exception. See Towerridge, 111 F.3d at 769; New Mexico Right to Choose/NARAL, 1999 WL 516704, at *7. Thereafter, because attorney's fees under the bad faith exception are necessarily punitive and only appropriate in exceptional cases, "a court must make [a] threshold finding that the unsuccessful litigant has acted in bad faith." See U.S. Indus., Inc. v. Touche Ross & Co., 854 F.2d 1223, 1241 & n.27 (10th Cir. 1988). The court cannot so find. The first judgment in this case was reversed by the court of appeals based upon legal error–the notion that the insurer should have been barred from presenting its case to the jury on remand is not reasonable. The insurer is

- 18 -

entitled to vigorously defend its position just as the insured has vigorously prosecuted its version of events.

That said, in a diversity case such as this, attorney's fees are a matter of state law. See Boyd Rosene & Assoc. v. Kansas Mun. Gas Agency, 123 F.3d 1351, 1352 (10th Cir. 1997) (en banc). The insured contends that it has prevailed in a first-party coverage dispute and is therefore entitled to attorney's fees under § 39-2-1 which allows recovery of attorney's fees to insureds prevailing on first-party coverage:

> In any action where an insured prevails against an insurer who has not paid a claim on any type of first party coverage, the insured person may be awarded reasonable attorney's fees and costs of the action upon a finding by the court that the insurer acted unreasonably in failing to pay the claim.

N.M. Stat. Ann. § 39-2-1.

Because this case involves a dispute over third-party coverage, not first-party coverage, Plaintiff may not recover attorney fees under § 39-2-1, despite its argument that the duty of good faith and fair dealing involves first party coverage issues.

The universal view is that

> [i]f the insurer's performance of its duty to pay runs directly to the insured for indemnifying the insured's direct loss, then the insurance classification is called "first-party insurance." The insurance benefit (the policy's financial proceeds) is paid to the insured to rectify the insured's actual loss. You may accurately regard all forms of insurance (except liability insurance and perhaps uninsured motorists coverage) to be first-party insurance.
> . . . .
> If the insurer's duty to pay runs to a third-party claimant who is paid according to a judgment or settlement against the insured, then the

- 19 -

insurance classification is called "third party insurance." A liability insurer pays policy proceeds directly to the third party on behalf of the insured who has a legal obligation to pay the third party.

1 Erik Mills Holmes et al. Holmes's Appleman on Insurance, 2d §§ 3.2 at 342 (1996); see also id. § 3.3 at 349 (discussing third-party indemnity insurance); Bumberger v. Ins. Co. of N. Am., 952 F.2d 764, 765 n. 1 (3d Cir. 1991) (citing B. Ostrager & T. Newman, Handbook on Insurance Coverage Disputes § 10.12, at 379 (4th ed. 1990)) ("First-party coverage reimburses the insured for personal injuries of the insured or damage to the insured's property.").

New Mexico law is in accord with these principles. In Amica Mut. Ins. Co. v. Maloney, 903 P.2d 834, 842 (N.M. 1995), the New Mexico Supreme Court accepted the insurer's argument that "first party coverage" under § 39-2-1 "applies to the underlying claim for coverage under a policy and not to a subsequent dispute over the amount of subrogation interest which the insurer is entitled to receive." The "first party coverage" was payment of full medical coverage to the insured, not "subsequent issues of proportionate contribution of attorney's fees." Amica, 903 P.2d at 842. That New Mexico adheres to the traditional definition of first-party coverage in interpreting § 39-2-1 is apparent: "We note that the legislature opted to use the limiting phrase 'an insurer who has not paid a claim on any type of first party coverage' as opposed to simply stating 'an insurer who has not paid any type of claim.'" Id. The insured's analysis would result in an award of attorney's fees in every successful bad faith case regardless of first party

or third party coverage.

Thus, the insured's claim against the insurer relates to third party coverage; the insured's ultimate liability for an excess judgment obtained by a third party. See Holmes's Appleman on Insurance, 2d §§ 3.3 at 349 ("Liability insurance is customarily described and classified as third-party insurance because the liability insurer's duty to pay runs not directly to the insured but directly (on the insured's behalf) to a third-party claimant who is injured by the insured's conduct."). The Tenth Circuit has strongly implied that § 39-2-1 does not apply to third-party coverage. See Valley Improvement Ass'n, Inc. v. United States Fidelity & Guar. Corp., 129 F.3d 1108, 1121 n.5 (10th Cir. 1997) (questioning award of attorney's fees in third party action where insurer failed to raise the issue that first party insurance was not involved).

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that Defendant Nutmeg Insurance Company's Motion to Reconsider and For Judgment Notwithstanding the Verdict filed June 4, 1999 (doc. 326), is denied;

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Nutmeg Insurance Company's Motion for Judgment Notwithstanding the Verdict Awarding Punitive Damages filed June 7, 1999 (doc. 327), is denied;

IT IS FURTHER ORDERED, ADJUDGED AND DECREED and Plaintiff's Application for Award of Attorney's Fees filed June 25, 1999 (doc. 333) as supplemented, is denied.

DATED this 9th day of September, 1999 at Santa Fe, New Mexico.

_____
United States Circuit Judge
Sitting by Designation

Counsel:

K. Stephen Royce and Eric Scott Jeffries, Jeffries & Rugge, P.C., Albuquerque, New Mexico for Plaintiff City of Hobbs.

William P. Gralow and Lisa Entress Pullen, Civerolo, Gralow & Hill, Albuquerque, New Mexico for Defendant Nutmeg Insurance Co.